THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| CHARLES AND NICOLE BALL, on behalf of themselves and all others similarly situated, et al., | ) ) ) ) |
| Plaintiffs, | ) ) No. 4:12-CV-00144-NKL |
| v. | ) ) ) |
| THE BANK OF NEW YORK, AS TRUSTEE FOR CWALT, INC., et al., | ) ) ) |
| Defendants. | ) |

**ORDER**

Pending before the Court in this consolidated action is Defendant Bank of New York's motion to dismiss the claims of Plaintiffs Charles and Nicole Ball [Doc. # 12][1]; Defendant Wells Fargo Bank's motion to dismiss the claims of Plaintiffs Gloria and Edward Kidd [Doc. # 50]; Defendant Deutsche Bank National Trust Company's motion to dismiss the claims of Plaintiffs Ruth and Michael Bates [Doc. # 65]; and Defendant Bank of New York Mellon's motion to dismiss the claims of Plaintiff Mary Hillebert [Doc. # 73].

**I. Background**

---

[1] Defendant Martin, Leigh, Laws & Fritzlen's motion to dismiss [Doc. # 10] is denied as moot because that party is no longer a Defendant in this suit. [Doc. # 43].

1

Plaintiffs Charles and Nicole Ball are Missouri residents who received a loan from Decision One Mortgage Company in June 2006. Ball secured this loan through a deed of trust on his property, which named the Mortgage Electronic Registration Systems as the beneficiary. Decision One later attempted to sell and securitize the Ball note. As a result, Defendant Bank of New York, a New York corporation, as trustee for a securitization trust, purports to own that note. In July 2008, Mortgage Electronic Registration Systems appointed as successor trustee former-Defendant Martin, Leigh, Laws & Fritzlen. Martin Leigh conducted a foreclosure of the property at the direction of Bank of New York in September 2008. Ball alleges that he was not in default at the time of foreclosure. In addition, Ball alleges that "[t]he Ball Note never was purchased or owned by [the securitization trust]," [Doc. # 1-4 at 9] and that the Bank of New York "never had a right or interest in or to the Note." [Doc. # 1-4 at 7].

Plaintiffs Gloria and Edward Kidd are Missouri residents who received a loan from Novastar Mortgage in July 2005. Kidd secured this loan through a deed of trust on her property, which named the Mortgage Electronic Registration Systems as the beneficiary. Novastar later attempted to sell and securitize the Kidd note. As a result, Defendant Wells Fargo, as trustee-owner of that note, purports to own the note. Mortgage Electronic Registration Systems appointed as successor trustee Kozeny & McCubbin, L.C. Kozeny scheduled a foreclosure sale of the property in March 2012. Kidd alleges that neither Wells Fargo nor the securitization trust for which it is trustee

2

held "legal title to the plaintiff's Note at the time of authorization of the non-judicial foreclosure sale of plaintiffs' property." [Case No. 4:12-CV-00322-NKL, Doc. # 1 at 4].

Plaintiffs Ruth and Michael Bates are Missouri residents who received a loan from Argent Mortgage Company in March 2006. Bates secured this loan through a deed of trust on her property. Argent Mortgage Company later attempted to sell and securitize the Bates note. As a result, Defendant Deutsche Bank National Trust Company, as trustee for a securitization trust, purports to own the note. Argent Mortgage Company appointed as successor trustee Centre Trustee Corp. Centre took action to foreclose on the property in July 2007. That foreclosure sale was voided in November 2007, and Bates still resides at the property. Bates alleges that "Deutsche Bank, as Trustee, was never the 'owner of the said Note' or 'the legal holder' of the note 'secured by said Deed of Trust.'" [Case No. 4:12-CV-00318-NKL, Doc. # 1 at 6].

Plaintiff Mary Hillebert, a Missouri resident, received a loan from Countrywide Home Loans in June 2006. Hillebert secured this loan through a deed of trust on her property, which named Mortgage Electronic Registration Systems as the beneficiary. As a result, Countrywide later attempted to sell and securitize the Hillebert note. Defendant Bank of New York Mellon, as trustee for a securitization trust, purports to own that note. Mortgage Electronic Registration Systems appointed as successor trustee several law firms, most recently the current trustee, Kozeny & McCubbin, L.C. Kozeny scheduled a foreclosure of the property in January 2012, which was postponed to March 2012.

3

Hillebert alleges that both Bank of New York and the securitization trust for which it is trustee "did not hold legal title to plaintiff's Note at the time of non-judicial foreclosure sale of plaintiff's property." [Case No. 4:12-CV-00316-NKL, Doc. # 1 at 4].

Ball asserts a claim of wrongful foreclosure, claiming that the Bank of New York did not have a right to foreclose because it did not own or possess Ball's mortgage at the time of foreclosure and he was not in default at the time of foreclosure. Ball and the three other Plaintiffs each assert a claim for declaratory judgment that the Defendants do not own or possess any of the Plaintiffs' mortgage notes and that foreclosure would therefore be wrongful under Missouri law. In addition, the Plaintiffs allege that the Defendant in each case violated the Missouri Merchandising Practices Act by concealing information from the Plaintiffs about the true owner of their mortgage notes and the authority of the Defendants to enforce their notes through foreclosure.

## II. Discussion

### A. The Plaintiffs' Claims for Wrongful Foreclosure and Declaratory Judgment that Foreclosure Would Be Wrongful

#### 1. Bates' Standing to Bring an Action for Declaratory Judgment

Deutsche Bank argues that Bates does not have standing to pursue a claim for declaratory judgment because Bates was not foreclosed on and because Bates cannot point to any action by Deutsche Bank suggesting that foreclosure is imminent. Deutsche Bank thus appears to argue that Bates is asking the Court for an advisory opinion, which is prohibited by Article III of the U.S. Constitution. Bates points out that he has alleged
4
...

both: (1) that Deutsche Bank "has taken action to enforce plaintiffs' note and to foreclose upon plaintiffs' property;" and (2) that "[i]t is anticipated that defendant . . . will continue to take such unlawful action." [Case No. 4:12-CV-00318-NKL, Doc. # 1 at 10-11]. These allegations are especially plausible in light of Bates' allegation that there has already been a foreclosure but that the foreclosure was voided. Thus, Bates has adequately pled an actual controversy between the parties, and dismissal on Article III grounds is not appropriate.

> **2. The Plaintiffs' Claims that the Defendants Did Not Own or Hold Their Mortgage Notes at the Time of Foreclosure or Threatened Foreclosure**
>
> **a. Whether the Plaintiffs Alleged Sufficient Facts to State a Claim for Wrongful Foreclosure**

The Defendants claim that the Plaintiffs have not stated sufficient facts to support a claim for wrongful foreclosure. The Court disagrees.

The Plaintiffs clearly allege that no Defendant owned or possessed their individual mortgage notes at the time there was a foreclosure or threatened foreclosure of the Plaintiffs' property. Under Missouri law, a foreclosure is invalid "when a circumstance denies the mortgagee the right to cause the power of sale to be exercised." *Graham v. Oliver*, 659 S.W.2d 601, 603 (Mo. Ct. App. 1983). One circumstance "that may render a foreclosure sale void" arises when "the foreclosing party does not hold title to the secured note." *Williams v. Kimes*, 996 S.W.2d 43, 45(Mo. 1999) (en banc); *see also, Morris v. Wells Fargo Home Mortg.*, No. 4:11CV1452 CEJ, 2011 WL 3665150, at *2 (E.D. Mo.

5

Aug. 22, 2011) ("A court may set aside a foreclosure sale as invalid when a circumstance denies the mortgagee the right to cause the power of sale to be exercised, such as when the person causing the foreclosure does not actually hold title to the note . . . ."). Another is when the foreclosing party lacks possession of the note. *In re Washington*, 468 B.R. 846, 853 (Bankr. W.D. Mo. 2011). Whether possession or title is required depends on whether the note is negotiable or non-negotiable. *See*, Mo. Rev. Stat. §§400.3-301, 400.3-309, 400.1-201(20); Dale Whitman, *How Negotiability Has Fouled Up the Secondary Market, and What to Do About It*, 37 Pepp. L. Rev. 737, 748 (2010).

Defendants argue that ownership is a question of law, not fact, and therefore these allegations by Plaintiffs do not satisfy the pleading standards of Federal Rule of Civil Procedure 8. First, this argument fails to take into account that the Plaintiffs allege that the Defendants do not possess the notes on which they seek to foreclose. Possession is clearly a question of fact. Further, the Plaintiffs allege that the Defendants failed to adhere to the Pooling and Service Agreements, which required actual delivery of the original mortgage documents. *See, e.g.*, [Doc. # 1-4 at 9]. These documents presumably included the promissory note, giving rise to the inference that the note was not delivered to the trust and was thus never in the individual Defendant's possession. *See* [Doc. # 1-4, at 9-10].

Second, Plaintiffs have stated facts which plausibly suggest that the Defendants did not have title to the notes at the time of foreclosure or threatened foreclosure. The

6

Plaintiffs allege that certain acts were not taken during the securitization process that were necessary to pass title to the Defendants. *See, e.g.*, [Doc. # 1-4, at 9-10]. Ball's complaint, for example, sets forth several, plausible scenarios that support this allegation. *See* [Doc. # 1- 4, at 7-10]. These allegations alone provide Defendants with adequate notice of Plaintiffs' claim for wrongful foreclosure, as required by federal pleading standards. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Nonetheless, Defendants contend that Plaintiffs lack standing to challenge any defect in the securitization of their mortgages because they were not parties to the Pooling and Servicing Agreements implemented as part of the securitization process. Therefore, the Court will address whether the Plaintiffs have standing to plead alleged noncompliance with the Pooling and Servicing Agreements during the securitization process.

### 3. The Plaintiffs' Standing to Plead Alleged Noncompliance with the Terms of the Pooling and Service Agreements

A number of cases have held that defects in the securitization process cannot be raised by a mortgagee to support a wrongful foreclosure claim. These courts seem to reason that, because the mortgagees are not parties to any of the securitization contracts, they have no standing to claim noncompliance with these agreements. *See, e.g.*, *In re Cook,* 457 F.3d 561, 567-68 (6th Cir. 2006) (ruling that the failure to record an assignment of a mortgage as required by contract impacted the relationship of the parties to the contract, but did not impede the ability to enforce the mortgage against third

7

parties); *In re Correia*, 452 B.R. 319, 324 (1st Cir. B.A.P. 2011) ("[T]he Debtors lacked standing to challenge the mortgage's chain of title under the PSA . . . . The Debtors cannot show they were a party to the contract . . . ."); *Bittinger v. Wells Fargo Bank N.A.*, 744 F. Supp. 2d 619, 625-26 (S.D. Tex 2010) (rejecting mortgagor's claim of wrongful foreclosure because mortgagor was not a party or beneficiary under the Pooling and Servicing Agreement and thus had "no ability under Texas law to sue for breach of contract."). At least one court applying Missouri law has followed this trend. *In re Washington*, 2011 WL 6010247, at *5 (Bankr. W.D. Mo. 2011).

But the Plaintiffs do not seek to enforce the contracts or affect the relationship between the parties to the contracts. Rather, the Plaintiffs point to defects in the securitization process as evidence that neither title nor possession of the note passed to the trustee who sought to foreclose their mortgages. Thus, the Plaintiffs seek only to use the breaches as evidence that the party seeking to foreclose is not the owner of their note. Missouri law is clear that a court may set aside a foreclosure sale as invalid when a circumstance denies the mortgagee the right to cause the power of sale to be exercised, *Morris v. Wells Fargo Home Mortg.*, No. 4:11CV1452 CEJ, 2011 WL 3665150, at *2 (E.D. Mo. Aug. 22, 2011), and ownership of the note is a prerequisite to foreclosure in Missouri, *Williams v. Kimes*, 996 S.W.2d 43, 45 (Mo. 1999) (en banc); *In re Washington*, 468 B.R. 846, 853 (Bankr. W.D. Mo. 2011).

While the Defendants rely on *In re Washington*, 468 B.R. 846 (Bankr. W.D. Mo.

8

2011), to claim that the Plaintiffs lack standing to raise breaches of the Pooling and Service Agreements, that case is distinguishable because the *Washington* court found that the note was a negotiable instrument and it was <u>undisputed</u> that the party enforcing the note possessed it at all times relevant to the note's enforcement. *Id.* at 853-54. Consequently, the debtor could not have been injured by any improper assignment of the note. The analysis is necessarily different where, as here, the debtor claims that the party enforcing the note never possessed or had title to the note due to noncompliance with the Pooling and Service Agreement. Defendants certainly have the right to show that the breaches of the Pooling and Service Agreements alleged by the Plaintiffs did not affect either title or possession, but they have not done so in their Motions to Dismiss.

The Court's conclusion is supported by *Barker v. Danner*, 903 S.W.2d 950, 955 (Mo. Ct. App. 1995), which held that a debtor generally lacks standing to contest the validity of an assignment of debt, except if the debtor will be prejudiced. One form of prejudice is the potential that the debtor will be exposed to multiple judgments. *See, e.g.*, *id.* at 955 ("[T]he only interest of the obligor being that he shall be required to pay his debt to but one person." (quotation omitted)); *State ex rel. Williams v. Williams*, 647 S.W.2d 590, 593 (Mo. Ct. App. 1983) ("The legitimate interest of a judgment debtor is to secure of record all proper credits on the judgment, the consequence of which is that the debt may be enforced only once."); *Livonia Props. Holdings, LLC v. 12840-12976 Farmington Rd. Holdings*, 399 Fed App'x 97, 102 (6th Cir. 2010) ("Obligors have

9

Case 4:12-cv-00144-NKL   Document 94   Filed 12/20/12   Page 9 of 13

standing to raise these claims because they cannot otherwise protect themselves from having to pay the same debt twice." (quotation omitted)). In fact, this is the very possibility that possession of the note is meant to prevent. *See Washington*, 468 B.R. at 853 ("Possession of the note insures that this creditor, and not an unknown one, is the one entitled to exercise rights under the deed of trust, and that the debtor will not be obligated to pay twice.").

Thus, the Plaintiffs have standing to challenge the Defendants' compliance with the Pooling and Service Agreements insofar as the alleged noncompliance impacted the Defendants' possession of the note, because if the Defendants did not possess the note, this could expose the Plaintiffs to multiple enforcements of the note. This reasoning compels the same result if the note is nonnegotiable and the Defendants did not hold title to the note, as the Plaintiffs claim, due to defects in the securitization process. Thus, the Defendants' Motions to Dismiss the Plaintiffs' wrongful foreclosure claims and claims for declaratory judgment that Defendants have no right to foreclose are denied.

**B.    The Plaintiffs' Claims Under the Missouri Merchandising Practices Act**

The Plaintiffs also claim that the Defendants violated the Missouri Merchandising Practices Act ("the Act"). The Act prohibits "unfair practice[s] . . . in connection with the sale or advertisement of any merchandise in trade or commerce." Mo. Rev. Stat. § 407.020.1. An "unfair practice" is one that:

(1) offends any public policy as it has been established by the Constitution, statutes, or common law of this state, or by the Federal Trade Commission, or its interpretive decisions *or*

(2) is unethical, oppressive, or unscrupulous; *and*

(3) presents a risk of, or causes, substantial injury to consumers."

*Schuchman v. Air Servs. Heating & Air Cond'g, Inc.*, 199 S.W.3d 228, 233 (Mo. Ct. App. 2006) (emphasis in original). The Plaintiffs allege that the Defendants violated the Act by concealing: (a) the mortgage trust beneficiary's lack of authority to transfer its interests; (b) the Defendants' lack of legal right to foreclose on Plaintiffs' property; and (c) the true identity of the mortgagee and the party in interest who would ultimately seek to foreclose. The Plaintiffs claim that because of these actions they were injured.

The Plaintiffs' claims fail because the Defendants' actions, as alleged, are not sufficiently "in connection with" any sale or advertisement to support a claim under the Act. The primary case cited by the Plaintiffs to the contrary is *Huffman v. Credit Union of Texas*, 2011 WL 5008309 (W.D. Mo. 2011). There, the court held that a defendant's alleged withholding of important information when providing finances after an automobile sale could support a claim under the Act. *Id*. at *6. Assuming without deciding that this conclusion is correct, the Court still holds that the present case is distinguishable from *Huffman*. The *Huffman* court noted that the defendant in that case was a party, through its agent, to the provision of financing for the sale of the car in question, and that this fact distinguished that case from "cases involving strangers to the original transaction." *Id*. (citing *State ex rel. Koster v. Portfolio Recovery Assocs., LLC*,

251 S.W.3d 661, 668 (Mo. Ct. App. 2011), which dismissed claims against a third-party debt collector for actions taken after the sale of merchandise because "[plaintiff] does not allege that [defendant] sold any merchandise or service, or was a party to the initial sales transaction. [Plaintiff] does not allege that any deceptive or unfair practice occurred either before or at the time the initial sales transaction was concluded."). Here, there is no allegation suggesting that the Defendants are anything but a stranger to the original transaction or that any unfair practice occurred at or before the time of sale. Thus, *Huffman* does not apply, and Plaintiffs have failed to state a claim under the Act.

To the extent that the Plaintiffs argue that payments on their mortgage note, presumably made to a Defendant or a Defendant's predecessor in interest, are themselves transactions under the Act between the Plaintiffs and the Defendants, this claim also fails. Such payments cannot reasonably be viewed as separate transactions under the Act because they are conditions bargained for in the Plaintiffs' original creation of the mortgage note – a transaction to which these Defendants were strangers. For these reasons, all four Plaintiffs' claims under the Missouri Merchandising and Practices Act fail as a matter of law and must be dismissed.

## III.  Conclusion

For the foregoing reasons, it is ORDERED that Defendant Martin, Leigh, Laws & Fritzlen's motion to dismiss [Doc. # 10] is DENIED as moot; Defendant Bank of New York's motion to dismiss [Doc. # 12] is DENIED as to Ball's claim that foreclosure was
12

and would be wrongful and GRANTED as to the Missouri Merchandising and Practices Act claim; Defendant Wells Fargo Bank's motion to dismiss [Doc. # 50] is DENIED as to Kidd's claim that foreclosure would be wrongful and GRANTED as to the Missouri Merchandising and Practices Act claim; Defendant Deutsche Bank National Trust Company's motion to dismiss [Doc. # 65] is DENIED as to Bates' claim that foreclosure would be wrongful and GRANTED as to the Missouri Merchandising and Practices Act claim; and Defendant Bank of New York Mellon's motion to dismiss [Doc. # 73] is DENIED as to Hillebert's claim that foreclosure would be wrongful and GRANTED as to the Missouri Merchandising and Practices Act claim. In all other regards, if any, the Motions to Dismiss are DENIED.

s/ Nanette K. Laughrey  
NANETTE K. LAUGHREY  
United States District Judge

Dated: December 20, 2012
Jefferson City, Missouri